## PETERSON *v.* WILBANKS.

1. The rulings of the court on the admission and rejection of evidence, as set out in divisions 1 to 8, inclusive, were not erroneous for any reason assigned.
2. The charges complained of in divisions 9 to 16, inclusive, do not show error for any reason assigned.
3. The evidence authorized the verdict, and the court did not err in overruling the motion for new trial.

   No. 5336. FEBRUARY 17, 1927. REHEARING DENIED MARCH 5, 1927.

Appeal and Error, 4 C. J. p. 969, n. 56.
New Trial, 29 Cyc. p. 824, n. 41.
Trial, 38 Cyc. p. 1339, n. 77, 82; p. 1595, n. 90.

Claim; equitable pleading. Before Judge Strange. Montgomery superior court. January 15, 1926.

Hugh A. Peterson filed a petition against N. T. Way, to foreclose a certain mortgage, alleging that on June 9, 1905, N. T. Way of Glynn County made and delivered to Mrs. Carrie Peterson, as guardian of plaintiff, a certain mortgage of that date, conveying unto Mrs. Peterson as guardian a certain tract of land in Montgomery County, for the purpose of securing the payment of $3,000 due and payable on June 15, 1906, with interest at the rate of eight per cent. per annum; that at the time the mortgage was made the plaintiff was a minor, but subsequently he arrived at the age of 21 years, and thereafter Mrs. Peterson duly transferred the mortgage and debt to him in writing; and that, although the debt is past due, N. T. Way fails and refuses to pay the sums of money due thereon. The plaintiff prayed for an order requiring the defendant to pay into court, by the first day of the next term, the principal and interest due on the mortgage, besides the costs, and in default thereof that the mortgage be foreclosed, etc. The mortgage was in due course foreclosed, and a mortgage fi. fa. was duly issued and levied upon the property described. A claim was interposed by Mrs. Ada M. Wilbanks. The plaintiff in aid of the levy amended his tender of issue therein, and alleged in substance the following: The property levied upon was owned by John A. Peterson at the time of his death. In his will Peterson provided that the land should be sold by his executors at public or private sale and the proceeds equally divided between his sons, the plaintiff and C. H. Peterson. The will appointed A. A. Peterson Jr. and C. H. Peterson as executors, and they duly qualified and acted as such. They sold the land at private sale to N. T. Way for $6,000, on credit, and took from Way two notes secured by mortgages on the land for the purchase-price thereof, bearing interest at the rate of eight per cent. per annum, one of the notes being for $3,000 payable to C. H. Peterson and then and there delivered to him; the other note being for a like amount and secured by the mortgage foreclosed in this case. At the time of the sale plaintiff was a minor, and his mother, Mrs. Carrie Peterson, had been appointed and was qualified as his guardian, and the note and mortgage for $3,000, the part of the proceeds of the sale going to him, was made payable to his guardian for him. The mortgage-note was deliv-

ered by Way to A. A. Peterson Jr., for the plaintiff. The executors executed a deed conveying the land to Way, and he entered into possession thereunder and remained in actual possession of the land for two or three years thereafter. The mortgage last mentioned was duly recorded in the office of the clerk of the superior court of Montgomery County. In June or July, 1907, A. A. Peterson Jr. sued Way on the note, recovered judgment, and caused execution to be issued thereon. He sued in his own name under a pretended transfer to himself, signed "Mrs. Carrie M. Peterson, by A. A. Peterson Jr." He undertook to transfer the mortgage to himself, without the knowledge or consent of the guardian or the plaintiff, who was then a minor, and without authority in law or fact sued the note to judgment in the city court of Mount Vernon. The pretended transfer was unauthorized and void; it appeared on the note at the time of the suit, and on the record in the office of the clerk of the superior court of Montgomery County. Afterward A. A. Peterson Jr., in August, 1907, bought the land from Way, agreeing to pay and assuming the mortgage foreclosed as a part of the consideration or purchase-price of the land. Having purchased the land in his individual right, A. A. Peterson Jr. caused the sheriff of the county to mark the execution issued on his suit against Way "paid," but he did not pay any money to the sheriff, and did not pay to plaintiff or his guardian anything on the mortgage. Plaintiff has never been paid anything on the mortgage, nor has anything ever been paid to his guardian thereon for him. Prior to his purchase of the land A. A. Peterson Jr. called on Way, and Way claims to have paid to him on the mortgage the sum of $1,500 or $1,700; but the alleged payment was never paid over to plaintiff or to his guardian; if paid at all, it was to A. A. Peterson Jr., without the knowledge or consent of the plaintiff or his guardian, and A. A. Peterson Jr. was not authorized to collect or receive payment thereon. In the purchase of the land from Way, as plaintiff is informed, A. A. Peterson Jr., in addition to assuming and agreeing to pay the mortgage, paid to Way $500, but Way had paid to Peterson $1,500, which he kept and did not pay to plaintiff or his guardian. Peterson, after getting a deed from Way, conveyed the land to W. L. Wilson to secure a loan of $1,000. The claimant during the time of these transactions was the wife of A. A. Peterson Jr., and she acquired her alleged claim to the land

under the following circumstances: Shortly after conveying the land to Wilson to secure the aforesaid loan, A. A. Peterson Jr. conceived the idea of procuring a larger loan on the land in the name of his wife, the claimant, and of having title made to her. He made application in her name to John Hancock Mutual Life Ins. Co., through the Southern Mortgage Company, for a loan secured by the land in question, and with the proceeds thereof the loan procured of Wilson, with interest, amounting to $1,200, was paid; and Peterson had Wilson convey the land to his wife. The loan procured in the name of the claimant is still outstanding against the land, which is of a value sufficient to pay both of said mortgages and also the loan. While the claimant has a deed to the land from Wilson, she did not in fact purchase the land from Wilson; on the contrary her husband conveyed the land to Wilson as security for a loan of only $1,000, and remained in possession of the land even after claimant received her deed from Wilson, and after the loan on the land made by her. The transaction really amounted to no more than a transfer to the claimant by her husband, and he acted throughout the transaction for his wife. Whatever title she acquired to the land was with full notice and knowledge of the rights of plaintiff and of his unsatisfied mortgage on the land. At the time of the transfer to his wife Peterson was insolvent; the transfer was made to hinder, delay, and defraud his creditors; claimant paid nothing of value for the land; she is not an innocent purchaser for value; therefore the land is subject. Plaintiff prays that the land be adjudged subject to his mortgage execution, and that the same proceed to sale. The jury returned a verdict for the claimant. The plaintiff made a motion for new trial, which was overruled, and he excepted.

*Hugh Peterson, A. C. Saffold,* and *W. S. Mann,* for plaintiff.

*J. K. Jordan, W. M. Lewis,* and *Lankford & Rogers,* contra.

HILL, J. (After stating the foregoing facts.)

1. Ground 1 of the motion for new trial complains of the introduction of the original suit on the mortgage-note in controversy, on the ground that the note or mortgage sued on was made payable to Mrs. Carrie Peterson as guardian of· Hugh A. Peterson, and the transfer on the back of the note was made to A. A. Peterson Jr., and Mrs. Carrie Peterson's name as guardian for Hugh A. Peterson was signed thereto by A. A. Peterson Jr., and apparently

he had no authority to sue on the note or to have it in possession, and a suit thereon was without authority. The suit was in the city court of Mount Vernon, in favor of A. A. Peterson Jr., transferee, against N. T. Way, and was introduced together with a copy of the mortgage indorsed: "For value received I hereby transfer the within note and mortgage to Toombs County Bank, with full power to enforce the same. [Signed] A. A. Peterson. This 21st day of April, 1926. Signed, sealed, and delivered in the presence of W. H. Easterling, T. A. Scarboro, N. P." Also introduced was the judgment on said suit and the execution issued thereon, with the entry of payment on said execution. We hold that the suit on the mortgage in the city court of Mt. Vernon, with the various entries thereon, was properly admitted in evidence.

2. Ground 2 of the motion is as follows: "Because the court erred in this, to wit; The case on trial was a claim filed to a levy on land under a mortgage fi. fa., wherein the mortgage foreclosed was duly executed and recorded in the proper county, of a date prior to the deed made by the mortgagor to the lands levied upon, and under which the claimant held title. The claimant contended that she was an innocent purchaser for value. As shown by the mortgage foreclosed, it was made by the defendant, N. T. Way, payable to Mrs. Carrie Peterson as guardian for the plaintiff, Hugh A. Peterson. It appeared that A. A. Peterson Jr. sued on an alleged balance due on said mortgage foreclosed, for $1,512.44 principal, $98.14 interest, and $161.05 attorney's fees, on May 3, 1907, in the city court of Mt. Vernon, the same being against the defendant, N. T. Way, the copy of mortgage sued on having on the back thereof the following indorsements, to wit: 'Received on the within mortgage $1,000.00, 7-12-05. Mrs. Carrie Peterson, Guardian of Hugh A. Peterson, A. A. Peterson Jr. Paid on the within 6/19/1906, $500; 10/4/1906, $200.' It further appeared that the execution issued on the judgment in said suit for the amounts aforesaid, in favor of A. A. Peterson, transferee, against N. T. Way, maker, et al., had indorsed on it, 'Paid in full, August 15, 1907, A. J. Burch, sheriff.' It further appeared that the original mortgage was lost, but that the same had been recorded in the mortgage records of the office of the clerk of the superior court of Montgomery County, first in Book R, page 387, of the date of June 20, 1905, and this record showed no indorsements on the back of

the mortgage except that of the accommodation indorser.  The said mortgage was recorded the second time (and it so appeared in the trial of the case at the time the evidence hereinafter complained of was admitted) in the mortgage records of said county in Book Z, page 72, and immediately following the record of said mortgage and appearing to be indorsed on the back of said mortgage, and as a part of said record, the following indorsements, to wit: 'Georgia, Toombs County.  For value received, I hereby transfer the within note and mortgage to A. A. Peterson Jr., with full power to enforce the same.  This April 21, 1906.  Mrs. J. A. Peterson, Guardian, by A. A. Peterson Jr.  Signed, sealed, and delivered in the presence of: W. H. Easterling, T. A. Scarboro, N. P., Toombs County, Ga.'  That the issue in said case made by claimant was that said mortgage was satisfied and had been paid.  That the claimant had then and there offered in evidence the entry on the general execution docket of said County of Montgomery, showing the record thereon of the said execution in favor of A. A. Peterson Jr., and against N. T. Way et al., defendants, with the notation entered on said entry: 'Paid in full, August 15, 1907, A. J. Burch, sheriff.'  'Cancelled from record, May 20, 1908, J. C. Calhoun, clerk.'  That the plaintiff through his counsel then and there objected to the introduction of said evidence, on the ground that there appeared to be no authority authorizing the clerk of the superior court to cancel the execution of record, that the mere entry of the sheriff on the fi. fa. that it was paid in full was no proper or legal direction to the clerk of court to cancel the execution of record.  That the court then and there overruled the objections of plaintiff aforesaid and admitted said evidence, and the same was harmful and prejudicial to plaintiff in the trial of said case; and movant assigns error on said ruling, and says that the court erred in admitting said evidence over the objections urged thereto on each and all of the several grounds thereof."  It was not error to admit the evidence over the objection of plaintiff's counsel, for any reason assigned.

3.  Ground 3 is as follows: "Because the court erred in the following particulars, to wit:  Movant had foreclosed a mortgage payable to Mrs. Carrie Peterson as guardian for movant, and indorsed by her to movant, and the execution issued thereon had been levied on the land described in the mortgage; that said mort-

gage was duly recorded in the county where the land was located. It appeared that the claimant's title originated out of the mortgagor of a date subsequent to the record of said mortgage. It further appeared that A. A. Peterson Jr. had sued the mortgagor at common law on said mortgage debt, on which execution had issued, and [on] which execution the then sheriff of Montgomery County, A. J. Burch, had entered at the instance of said A. A. Peterson Jr. the following: 'Paid in full, August 15, 1907, A. J. Burch, sheriff.' That said sheriff made said entry at the direction of A. A. Peterson Jr., but that he received no money from the defendant in said execution or from the said A. A. Peterson Jr., plaintiff in said execution. It further appeared that a mortgage-note made by the defendant, N. T. Way, to C. H. Peterson had been sued to judgment at common law by C. H. Peterson at the same time the above-stated note had been sued to judgment by A. A. Peterson Jr., and that the execution issued on the suit in favor of C. H. Peterson had likewise been marked paid by said sheriff at the direction and instance of the said A. A. Peterson Jr. That the claimant on the trial of said case offered in evidence the testimony of the witness A. J. Burch, on cross-examination, to wit: 'After these papers were canceled (referring to the execution in favor of C. H. Peterson against N. T. Way, and also the execution in favor of A. A. Peterson Jr. against N. T. Way), I took them to Soperton and made a demand on Mr. C. H. Peterson for my cost, told him that the fi. fas. had been canceled, both the fi. fas. of Mrs. Carrie Peterson, guardian, and the fi. fas. of C. H. Peterson. I don't know that I mentioned both of them, but I mentioned his, and may have mentioned both of them; but I talked to him about the cost in his. I think this was six or seven days after this cancellation, very shortly afterwards. Mr. C. H. Peterson didn't say anything about it, only sort of smiled and said, "You will have to get that out of Arch." Mr. C. H. Peterson made no objection to me to Mr. A. A. Peterson having canceled these fi. fas. I took it that he understood it and Arch understood it, and I went back to Arch for my cost. I took it for granted that C. H. Peterson knew all about it, because he smiled and made no objection· to it.' To the introduction of said testimony movant through his counsel then and there objected, on the grounds that the same was in another case, irrelevant and immaterial, and what was said to or by Mr. C. H.

Peterson would have nothing to do with the case on trial; that the claimant could not show what the various parties knew about the cancellation of the paper in question by showing what some other party knew in a different suit on a different note; and that C. H. Peterson, to whom the testimony referred, was in no way connected with the suit on trial or the mortgage note foreclosed. That the court then and there overruled the objections of movant and admitted said testimony, the same being harmful and prejudicial to movant; and movant avers that the court erred in so admitting said testimony over the objections aforesaid on each and all of the several grounds thereof." The evidence admitted was irrelevant, but harmless.

4. Ground 4 assigns error because the court refused to exclude the evidence of the claimant that "A. A. Peterson also told me, in that same connection, about paying Mrs. Carrie Peterson as guardian; he said he paid her, I think it was something like $1,700, or $1,500 may be, at one time, and $200 at another, I don't remember the exact amount." Movant objected to said testimony and moved to exclude the same on the ground that it would be self-serving declarations, it appearing that A. A. Peterson Jr. was transferor of claimant, that said testimony was harmful, and that payment could not be shown by the declarations of the debtor. The evidence was admissible to show the bona fides of the claimant, and the court did not err in refusing to exclude it.

5. Ground 5 complains because the court erroneously allowed the following testimony on cross-examination of Mrs. Carrie Peterson, over objection of movant: "My son, A. A. Peterson, acted like a father in supporting and educating Hugh Alexander Peterson [referring to the plaintiff] and the young children, and looked after them; he paid for Hugh's education and furnished him clothes and provisions to live on. Archie was the oldest son, and acted like a father to his younger brothers." The objection interposed by movant was that "the same was irrelevant, and that the claimant could not show payment on the mortgage that way; that she would have to have an order from the ordinary entitling A. A. Peterson to encroach on the corpus of this estate; and that he could not show supplies and things furnished to the ward, even the guardian could not do it, and get the benefit of it as a credit on the claim, without an order of court." The evidence was not subject to the objection urged against it.

6. Ground 6 alleges error because the court allowed the following testimony of H. P. Wilbanks, the husband of claimant at the time of the trial: "A. A. Peterson during his lifetime made some improvements on the lands of Hugh A. Peterson, the plaintiff in this case; he cleared some land and made the necessary improvements about the place. A. A. Peterson made the improvements on Alex's land. He made improvements on the old home place, and it belonged to Mrs. Peterson until her death, is my understanding. There were improvements also made on the home place, some land cleared and fenced, and so on, out there. I would think the improvements that A. A. Peterson made on the home place would be worth a thousand dollars at least. I know A. A. Peterson made improvements on the home place, because I was employed by him at the time, and the improvements consisted of clearing land and building wire fence. I could not say just how much land he cleared, nor just how much wire fence he put up, but he continued to keep up the place and kept up the repairs, and so on. I could not say about the different improvements that were put on that place; it has been so long. I did not go out there very often. My estimate of a thousand dollars for these improvements is not so much guesswork, because I was out there, and I know it and know there was fencing carried out there, and I know there was land cleared out there. I could not say just what the fencing cost that A. A. Peterson carried out there. I have no record of it, I didn't figure up how much these improvements cost." The movant urged, as objections to this testimony, that it was irrelevant and immaterial, and that the testimony as to the cost of improvements and repairs was an opinion and conclusion of the witness. This evidence was properly admitted, and was not objectionable for any reason assigned.

7. Ground 7 complains because the court ruled out testimony of the claimant, elicited on cross-examination, as follows: "I don't remember that I gave any security for these notes to the Mt. Vernon Bank, one for $5,864.21 and the other for $2,550. This paper now exhibited to me is the paper that Mr. Jordan was asking me about yesterday, and I think this mortgage was given to secure these notes, but I could not say positively. I can not see very well, but I guess I bought this property from A. A. Peterson that I mortgaged to secure these notes. I did not testify on yes-

terday that shortly before I bought the McCrimmon place A. A. Peterson gave me all of his property. I bought it from him. I bought this property conveyed in this deed dated November 6, 1907, being a part of a tract of land bought by W. C. Joiner from James McNatt, containing 100 acres, more or less, but I don't remember the amount I paid for it. I bought that property from A. A. Peterson. I also bought from A. A. Peterson the 25 acres, more or less, described in this deed of November 5, 1907. I also bought from A. A. Peterson this property described in this deed dated November 5, 1907, bounded by lands of F. B. McBride, Mrs. S. A. Burch, D. S. Williamson, E. J. Wells, and Eliza McArthur, and I paid him the money for it. I guess I paid him a thousand dollars for it, if that is what the deed calls for. I don't remember the exact amount. This other deed heretofore mentioned, $1,500 recited as consideration, I paid that also. The first deed I was asked about, $37.50, I paid that also. Also this deed of November 6, 1907, reciting a consideration of $400 and conveying to me certain lands, I paid that consideration also. I think I paid this money by check; don't remember what bank the check was given on. This deed dated November 5, 1907, reciting a consideration of $3,200, I bought the land described in that deed and paid A. A. Peterson for it." Plaintiff's counsel contended that the evidence was relevant, because Mrs. Wilbanks, the claimant, contended that she bought the land from A. A. Peterson, her husband, and paid six or seven thousand dollars for it, and that she was a purchaser for value; while the plaintiff contended that she was not a purchaser for value, but that the transfers were made for the purpose of avoiding debts and defrauding creditors. The evidence above related to a number of transfers, other than the one in controversy, and the court ruled that the plaintiff could not go into the question of whether or not the deeds were voluntary, and excluded the evidence from the jury. The exclusion of the evidence was not error for any reason assigned.

8. Ground 8 alleges error on the admission of the testimony of Willie T. McArthur, over objection, as follows: "I never paid much attention to the improvements made on what is known as the old home place of the Petersons by A. A. Peterson during his lifetime; but being associated with him, I know he made some improvements there. I saw the improvements riding the road

there, and the most important of any I noticed was building settle-
ments there." The objection was that the evidence was irrelevant
and immaterial, and because an outsider, who is not even the rep-
resentative of the ward, could claim no credits for investments that
were made on his land. The testimony was not subject to the ob-
jection urged against it.

9. Ground 9 alleges error in the following charge of the court
to the jury: "I believe she [the claimant] admits that her hus-
band afterwards bought this land from Way, the man who bought
it originally, and he agreed to assume a balance due upon his
mortgage. She contends that Way had made certain payments,
and that those payments belonged to be credited upon the mort-
gage." Plaintiff says that said charge was error, because "it
was admitted by claimant that the said A. A. Peterson assumed
and agreed to pay said mortgage, and not a balance due thereon;
and to the sentence that the payments made by the said Way
should be credited on said mortgage, for the reason that the same
was not adjusted to the facts and contentions of the parties, was
not supported by the evidence, and because the evidence showed
conclusively that the alleged payments made by Way were not
made to the holder of the mortgage or the one authorized to receive
said payments; and said charge was prejudicial and harmful in
that it led the jury to believe that the alleged payments made by
the said Way to the said A. A. Peterson should be allowed and
credited on said debt." The criticism of the charge complained
of is without merit.

10. Ground 10 complains because the court charged the jury
as follows: "She [the claimant] contends further that her hus-
band made other payments upon his mortgage." The exception is
that the charge was "prejudicial to the plaintiff in the trial of said
case, and movant assigns error thereon for the reason that said
charge authorized the jury to allow credit for said alleged pay-
ments made by the said A. A. Peterson to Mrs. Carrie Peterson,
when said testimony was insufficient to authorize or justify the
finding that said alleged payments had been made. That said
charge was not supported by the evidence and not adjusted to the
evidence," etc. The criticism of the charge is without merit.

11. Ground 11 complains of the following charge to the jury:
"And they contend that he filed suit upon that note for the balance

due, which I believe was $1,512, claimed in that suit, due upon the mortgage. I simply allow that to go in for the purpose of showing or illustrating, as far as it may, any contentions of either party as to the question here." The objection is that the charge was not adjusted to the facts, and stated a contention that was not supported or authorized by the facts in proof. This criticism is without merit.

12. Ground 12 alleges error in the following charge to the jury: "Now, I charge you in this case that Mr. Peterson, the brother or executor, if you find that he assumed this indebtedness, would have no right to transfer that mortgage to himself, and would have no right to bring suit upon that mortgage, but the suit as introduced before you [referring to said suit at common law by A. A. Peterson against the said defendant, Way] would be introduced for the purpose of illustrating, as far as possible, any payment that may have been made, or any amount that might have been due upon that mortgage at that time." The exception is that this charge was not adjusted to the evidence or contentions of the parties; and that "the same authorized the jury to accept said documents as evidence that said mortgage had been paid down to the amount sued for, and that there was a balance due on said mortgage, and that the balance due thereon was the amount for which said suit proceeded," etc. The charge complained of is not subject to the criticism made.

13. In grounds 13, 14, and 15, error is assigned because the court charged the jury that the burden of proof was on the plaintiff to make out his case by a preponderance of the testimony. Movant says that the charge was error harmful to him, in that it placed on him a greater burden than the law imposes. Also, that the court erred in instructing the jury that "the real question in the case, gentlemen, is whether or not the claimant, or the claimant's husband, paid off this indebtedness." It is insisted that this charge putting the burden on movant was error, for the reason that the burden should have been placed on the claimant, the defense in the case being that the mortgage was paid. We hold the burden of proof in the case was on the plaintiff in fi. fa., and the excerpt from the charge of the court is not error for any reason assigned. See Civil Code (1910), § 5170.

14. The 16th ground complains of the following charge of the

48

court: "I charge you further that Mr. Peterson would not have the right to use any of this estate in paying off this debt. I mean that they would not have the right to set off any funds used by Mr. Peterson, if you should find that he used any of the funds of the brother's estate. In other words, Mr. Peterson would not have a right, nor the guardian, under the law, to use any of the corpus of the ward in paying off this debt. I charge you that a guardian is allowed all reasonable expenses and disbursements suitable to the circumstances of his ward, but the expenses of maintenance and education should not exceed the annual profits of the estate, except by leave of the ordinary previously given." The above charge was excepted to on the ground, "that the evidence was too general, vague, and indefinite to support a payment of any sum on said mortgage; and that the same was contrary to law, in that it authorized the jury to apply to the payment of all interest that might be due on the mortgage the value of any repairs made on said property, or the expense of any board or schooling paid by said A. A. Peterson for said ward, when there was no evidence that the guardian failed to provide said ward with said necessaries, or that the things so provided by the said A. A. Peterson were necessaries and not provided by the guardian." The above charge is not error for any reason assigned.

The evidence authorized the verdict and the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Gilbert, J., who dissent, and Hines, J., disqualified.*